# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 15 |
| Hellas Telecommunications (Luxembourg) V, | Case No. 10-_____ ( ) |
| Debtor in a Foreign Proceeding. | |

## DECLARATION OF CHRISTIAN PILKINGTON
## PURSUANT TO 28 U.S.C. § 1746

I, Christian Pilkington, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a partner in the law firm of White & Case (International) LLP, located at 5 Old Broad Street, London, EC2N 1DW United Kingdom. I submit this declaration (the "Declaration") in support of the Verified Petition for Recognition of Foreign Main Proceeding and Motion for Related Relief dated November 12, 2010 (together with the Form of Voluntary Petition filed contemporaneously therewith, the "Petition"),[1] which is to be filed contemporaneously herewith, and which seeks entry of an order (i) recognizing the voluntary restructuring proceeding (the "UK Proceeding") concerning Hellas Telecommunications (Luxembourg) V ("HTV," or the "Debtor") currently pending before the Chancery Division (Companies Court) of the High Court of Justice of England and Wales (the "UK Court") as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (ii) granting related relief pursuant to section 1520 of the Bankruptcy Code, and (iii) granting further permanent relief pursuant to

---

[1] Except as otherwise indicated, capitalized terms used herein carry the meaning set forth in the Petition.

sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a) and 1525(a) of the Bankruptcy Code in support of the restructuring of the Debtor and certain of its affiliates under English law (the "Restructuring") through, among other things, a scheme of arrangement (the "Scheme"), if such Scheme is duly approved by a requisite majority of affected creditors and sanctioned by the UK Court, all in accordance with applicable English law.

2. In this Declaration, after describing my background and qualifications, I provide a description of the general structure of English law in respect of schemes of arrangement which specifically relate to this Court's consideration of the Petition.

3. In preparing this Declaration, I have reviewed (i) the Petition and (ii) relevant provisions of the Companies Act 2006, the Insolvency Act 1986 and other provisions of English law, as they relate to chapter 15 of the Bankruptcy Code and other aspects of U.S. bankruptcy law.

## BACKGROUND AND QUALIFICATIONS

4. Pertinent aspects of my legal background are as follows: I earned a Bachelor of Laws degree from the *University of Nottingham* in 1995 and a Master of Laws degree in Commercial and Corporate Law from the *London School of Economics* in 2003. I am a partner in the Financial Restructuring & Insolvency team in White & Case LLP's Banking & Capital Markets group in London. I have been a practicing attorney concentrating in all aspects of national and cross-border restructuring and insolvency work since 1999. I also have regularly advised directors of companies in financial difficulty, often with an international element, frequently working with overseas counsel and coordinating advice on cross-border restructuring and insolvency issues.

5. I regularly publish articles on English, EU and cross-border insolvency and restructuring law issues in legal journals and periodicals.

6. Papers submitted by the Debtor in the UK Proceeding have been drafted by me or under my supervision.[2]

## STATEMENTS ON ENGLISH LAW

7. A scheme of arrangement is a proceeding under the laws of England and Wales[3] that allows companies to effect compromises or arrangements, including restructuring their liabilities, with their members and/or creditors (or any class of them). Schemes are available in the situation where a company is insolvent, but also where no grounds for insolvency exist. They are particularly useful in cases in which hold-out creditors seek unfair advantage as against similarly ranked creditors in work-out negotiations, as they enable companies and their creditors in certain instances to obtain a court sanction to effect restructuring measures without having to obtain approval from 100% of affected creditors. Creditors in general benefit from the fact that a scheme can afford the certainty that they will receive at least certain consideration in partial satisfaction of their claims relatively quickly in accordance with the terms of the scheme, although they may lose some of their rights, including the right to full satisfaction of their claims, pursuant to the "compromise" or "arrangement" proposed in the scheme.

8. The scheme process begins when a company proposes the scheme and then submits it to the UK Court, seeking its permission to convene a creditors' meeting (or meetings) to vote on the scheme proposal, i.e., the "compromise" or "arrangement" being put to the creditors and/or members. After a hearing, at which creditors are entitled to raise objections (primarily at this stage as to the composition of creditor classes and jurisdiction issues), the UK

---

[2] The information concerning the UK Proceeding provided here is drawn either from public documents or from my personal knowledge. Furthermore, I have not relied on any confidential attorney-client communications or on confidential documents prepared in anticipation of litigation.

[3] The legal basis for schemes of arrangement is set out in Part 26 of the Companies Act 2006 of England and Wales.

Court decides whether to order that a creditors' meeting (or meetings) be convened to discuss and vote on the proposed scheme.

9. Any such convening order must rest on a finding of requisite jurisdiction. To have jurisdiction under English law to sanction a scheme, the UK Court must have jurisdiction to wind up the company in question under the Insolvency Act 1986. For foreign companies, this requires that there be "sufficient connection" with England and Wales. In this regard, although this test is different to that to establish a company's "center of main interests" or "COMI," in practice the factors that the UK Court will look at to establish both are the same.

10. If the UK Court finds it has jurisdiction and decides to allow a creditors' meeting (or meetings) to be convened, notice of the meeting must be delivered to creditors directly affected by the scheme before the meeting. Such notice must set forth the time and place of the creditors' meeting, and an explanatory statement must be distributed to such creditors that contains sufficient information for a typical creditor whose claim is being affected by the terms of the scheme to make a reasonable decision about whether to support the scheme. The explanatory statement is comparable to my understanding of the U.S. bankruptcy law concept of a "disclosure statement" as required under section 1125 of the Bankruptcy Code for solicitation of an acceptance or rejection of a chapter 11 plan. Affected creditors are entitled to attend (in person or by proxy) and ask questions regarding the proposed scheme at the creditors' meeting.

11. The scheme is considered approved by the creditors' meeting only if it is supported by a simple majority (by number) of the creditors present and voting (in person or by proxy) representing at least 75% by value of each class of creditors involved. All creditors whose claims would be affected by the scheme are entitled to vote. The voting majorities will normally be scrutinized and confirmed by an independent third party (in this case, the

"Information Agent")). In those cases where the creditors have been divided into a number of classes with different rights, each class of creditors must approve the scheme by the same majorities. In this connection it should be noted that non-consenting creditors can be bound into the terms of the Scheme only if they are within an approving class. Thus, unlike my understanding of what can occur in a confirmed chapter 11 plan, a scheme cannot "cram down" entire classes of dissenting creditors.

12. As noted above, in order for the scheme to become binding on the creditors following the creditors' meeting or meetings (assuming the requisite majority votes in favor have been obtained), it must also be approved by the UK Court at a fairness hearing, which I believe is comparable to a confirmation hearing under section 1128 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3020(b)(2). All affected creditors have an opportunity to raise questions and objections to the scheme and present evidence at the fairness hearing.

13. The UK Court has full discretion to grant or withhold its approval of the scheme at the fairness hearing. In particular, it will examine whether the applicable statutory requirements are met, for example whether the requisite majorities of voting creditors have approved the scheme (the Information Agent providing a sworn statement as evidence thereof) and whether the scheme overall is fair, taking into account the interests of the creditors and the nature of the scheme's impact upon dissenting creditors.

14. If the UK Court approves a scheme, it will take effect once a certified copy of the UK Court's order approving the scheme[4] has been submitted to the Registrar of Companies for England and Wales. It will then apply to, and be effective upon, all creditors in the relevant class

---

[4] The order may be appealed to the Court of Appeal, and appeal may be had from the Court of Appeal to the Supreme Court.

or classes, irrespective of whether or not they took part in the creditors' meeting or meetings and whether or not they voted in favor of the scheme.

15. Non-UK creditors have the same rights to participate in and vote at the creditors' meetings, participate and raise questions and issues at both UK Court hearings in relation to the scheme, and appeal the UK Court's orders, if any, as creditors from the UK.

16. In this case, it is anticipated that, as part of the Restructuring, the Debtor will likely be placed into an English administration before this Court holds its hearing on the Petition and the relief requested therein. In that connection, as a condition to opening an administration under the Insolvency Act 1986, the UK Court will be required to determine that HTV's COMI is in England.

17. During the administration, prohibitions and remedies against preferential and fraudulent transfers under, amongst others, sections 238, 239 and 423 of the Insolvency Act 1986 will apply.

--------[Remainder of page left intentionally blank.]---------

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 12, 2010
Antigua, Caribbean Islands

*C. Pilkington*

Christian Pilkington

White & Case (International) LLP
5 Old Broad Street
London, EC2N 1DW
United Kingdom

Counsel to Hellas Telecommunications
(Luxembourg) V